IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

BEN RUDY CASTILLO,

  Plaintiff,

v.                 CV 12-0445 WPL

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

  Defendant.

**MEMORANDUM OPINION AND ORDER**

  Ben Rudy Castillo, Jr., filed applications for Disability Insurance Benefits and Supplemental Security Income on October 14, 2008. (Administrative Record ("AR") 9.) He alleges disability beginning January 1, 2008, due to back pain, muscle pain in the right leg, and depression. (AR 9, 199.) Administrative Law Judge ("ALJ") Ann Farris held a disability hearing on February 14, 2011. (AR 21-49.) On March 8, 2011, she determined that Castillo was not under a disability as defined by the Social Security Act and was therefore not entitled to benefits. (AR 9-16.) Castillo filed an appeal with the Appeals Council, but the Council declined his request, making the ALJ's decision the final decision of the Social Security Administration ("SSA"). (AR 1-3.)

  Castillo sought review of the SSA's decision (Doc. 1) and filed a Motion to Remand to Agency for Rehearing (Doc. 19). The Commissioner responded in opposition (Doc. 21), and Castillo filed a reply (Doc. 22). Pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73(b), the parties consented to have me serve as the presiding judge and enter a final

judgment. Having carefully considered the pleadings, facts, and relevant law, I grant Castillo's motion and remand this case to the SSA for proceedings consistent with this opinion.

## STANDARD OF REVIEW

In reviewing the ALJ's decision, I must determine whether it is supported by substantial evidence in the record and whether the correct legal standards were applied. *See Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004) (citation omitted). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted). A "decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.* (quotation omitted). I must meticulously examine the record, but I may neither reweigh the evidence nor substitute my discretion for that of the ALJ. *See id.* The ALJ's "failure to apply the correct legal standards, or to show us that she has done so, [is] also grounds for reversal." *Winfry v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996) (citing *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994)).

## SEQUENTIAL EVALUATION PROCESS

The SSA has devised a five-step sequential evaluation process to determine disability. *See Barnhart v. Thomas*, 540 U.S. 20, 24 (2003); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). At the first three steps, the ALJ considers the claimant's current work activity and the medical severity of the claimant's impairments. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). Before reaching step four, the ALJ determines the claimant's residual functional capacity ("RFC"). *See* 20 C.F.R. §§ 404.1520(e), 416.920(e). In the fourth step, the ALJ compares the claimant's RFC with the functional requirements of his past relevant work to see if the claimant is still capable of performing his past work. *See* 20 C.F.R. §§ 404.1520(f), 416.920(f). If a claimant is not

prevented from performing his past work, then he is not disabled. *Id.* If the claimant cannot return to his past work, then the Commissioner must show at the fifth step that the claimant is capable of performing other jobs existing in significant numbers in the national economy. *See Thomas*, 540 U.S. at 24-25. *See also Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (discussing the five-step sequential evaluation process in detail). The claimant bears the burden of proof on the question of disability for the first four steps, and then the burden of proof shifts to the Commissioner at step five. *See Bowen v. Yuckert*, 482 U.S. 137, 146 (1987); *Talbot v. Heckler*, 814 F.2d 1456, 1460 (10th Cir. 1987).

## FACTUAL BACKGROUND

Castillo is a forty-year old man with a high school education. (AR 203.) In 1991, when he was a senior in high school, Castillo was involved in a motor vehicle accident that resulted in temporary paraplegia. (AR 271.) He underwent spinal cord surgery, and Harrington rods were inserted in his back. (AR 26.) After his accident, Castillo recovered enough to work as a car painter for thirteen years. (AR 200.) Following a short term in prison, he worked as a part-time janitor. (AR 200, 271.)

In January 2008, Castillo was released from prison and entered a rehabilitation program run by the State of New Mexico. (AR 276.) Soofia Khan, M.D., performed an initial examination of Castillo and reported that he had partially recovered following his accident and that he still had bladder and bowel movement difficulties. (*Id.*) Castillo told Dr. Khan that he suffered from neuropathic pain in his lower extremities, headaches, and anxiety, but he denied depression. (AR 276-77.) Dr. Khan diagnosed him with methamphetamine and nicotine dependence, prescribed medication for anxiety, and recommended that he limit his activity. (AR 281.)

Dr. Khan also referred Castillo to Lhudi Jimenez for physical therapy. (AR 288.) Jimenez noticed a "mild list" in his gait and gave him an exercise program to improve mobility. (AR 294, 301.) Castillo was discharged from the rehabilitation program on January 31, 2008. (AR 271.)

Months later, Castillo applied for benefits, but he never saw a treating physician for his pain or depression in the interim. The medical record only contains a series of consultative evaluations from late 2008 to early 2011. On December 6, 2008, Harry Burger, D.O., evaluated Castillo. (AR 311.) Castillo told Dr. Burger that his low back ached but that he was able to work. (AR 312.) Castillo also reported that he could stand for about an hour before needing to rest, walk over a mile, sit for an hour or more, lift fifty to seventy-five pounds, drive, and perform household chores and yard work. (*Id.*) Dr. Burger noticed that Castillo had a minor limp but did not need an assisting device and that he moved relatively quickly and smoothly. (AR 313.)

Dr. Burger opined that Castillo's 1991 back injury "does not functionally restrict him." (AR 311.) Further, he commented that Castillo claimed not to be able to afford medications yet "buys enough cigarettes to smoke half a pack a day and continues to spend his money on illicit drugs and methamphetamines."[1] (AR 312.) He concluded that Castillo was able to "function for gainful employment" and that his injury had healed. (AR 314.)

On December 10, 2008, Richard Fink, Ph.D., performed a psychological evaluation of Castillo. Dr. Fink observed that Castillo appeared to be depressed, had a restrained affect, spoke slowly, and was hard to hear. (AR 317.) However, Castillo had coherent thoughts, no indications of delusions, and was oriented in all three spheres. (*Id.*) Dr. Fink concluded that Castillo was moderately depressed but still retained a normal ability to understand and remember both short and detailed or complex instructions. (AR 318.) However, he believed that Castillo's ability to

---

[1] During the hearing, Castillo testified that this was inaccurate with respect to the illegal drugs and that he had not abused drugs following his rehabilitation in January 2008. (AR 33-34.)

sustain concentration and persist at tasks was limited by his physical ailments, and his ability for social interaction might be impaired by his depressed mood and lack of affect. (*Id.*) Based on this, Dr. Fink felt he might not interact well with the public or co-workers. (*Id.*)

A month later, Charles F. Bridges, Ph.D., performed a Psychiatric Review Technique evaluation of Castillo. (AR 320-33.) He noted that Castillo had been diagnosed with depression (AR 323, 332) and that he had only mild restrictions in activities of daily living, maintaining social functioning, and maintaining concentration, persistence and pace (AR 330). He also noted that Castillo had suffered one or two episodes of decompensation.[2] (*Id.*) Dr. Bridges also commented on Dr. Fink's finding that Castillo's ability to interact socially may be impaired, stating that this was inconsistent with information on Castillo's activities of daily living report. (AR 332.) His final conclusion was that Castillo's mental impairments did not impose severe functional limitations. (*Id.*)

On January 7, 2009, K. Glass performed a physical RFC assessment for the SSA. (AR 337-44.) Glass opined that Castillo could occasionally lift fifty pounds, frequently lift twenty-five pounds, stand and/or walk for about six hours in an eight-hour work day, sit with normal breaks for about six hours, and could push or pull without limitations. (AR 338.) As for postural limitations, Castillo could never climb ladders, ropes or scaffolds, but he could frequently climb ramps and stairs, balance, stoop, kneel, crouch, or crawl. (AR 339.)

There are no records for the rest of 2009 or 2010, save two case analysis reviews from Castillo's reconsideration claim. (AR 345-46.) On January 11, 2011, Castillo saw Maxsimo Torres, M.D. (AR 352-54.) Castillo reported that his pain was at a level nine out of ten, and his straight-leg raising test was negative on both sides. Dr. Torres observed that Castillo had normal balance, gait, and stance. (AR 353-45.)

---

[2] The notes from these episodes are not in the record.

On January 14, 2011, Castillo underwent an X-ray of his spine. The report reveals minimal thoracic scoliosis, but no acute abnormalities. (AR 350.)

In February 2011, Castillo's attorney arranged for him to see two additional consultative physicians. First, he saw Steven K. Baum, Ph.D., for a psychological evaluation. Dr. Baum diagnosed Castillo with Major Depressive Disorder and rated his Global Assessment of Functioning ("GAF") at forty-two.[3] (AR 357.) He then found mild limitations in his ability to remember, ability to carry out instructions, ability to work without supervision, ability to interact with the public, coworkers, and supervisors, and ability to adapt. (AR 358.) He also found moderate limitations in Castillo's ability to attend and concentrate. (AR 358.) Dr. Baum opined that Castillo had social impairments and would have difficulty holding a job. (AR 357.)

John R. Vigil, M.D., also examined Castillo in February 2011. His examination produced markedly different results than any of Castillo's prior physical examinations. Dr. Vigil reviewed Castillo's record for half an hour and then examined him for another half an hour. (AR 359.) Castillo reported to Dr. Vigil that his pain was at an eight or nine out of ten on average and that he could not sit or stand for more than ten minutes, walk more than a block, or lift more than twenty pounds. (AR 360.) During the appointment, Castillo reported that his pain was a seven out of ten. (AR 361.) Castillo was only able to sit for twenty minutes and then he had to stand up, and Dr. Vigil reported that he appeared moderately uncomfortable, had an unsteady and antalgic gait with a significant limp, and had a positive straight-leg raise on the right side. (AR 362.) After the thirty-minute evaluation, Dr. Vigil opined that Castillo has "significant and substantial pain with even minimal activity as well as at rest and that he has significant problems with most

---

[3] The GAF is "a hypothetical continuum of mental health-illness" assessed through consideration of psychological, social, and occupational functioning. Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders: DSM-IV-TR* 34 (4th ed., text rev. 2005). A score between forty-one and fifty is assessed when the patient is believed to have "[s]erious symptoms . . . OR any serious impairment in social, occupational, or school functioning." *Id.*

aspects of activities of daily living." (AR 363.) He concluded that Castillo had likely been medically disabled since 2009. (*Id.*)

Dr. Vigil completed a Functional Limitation Checklist on behalf of Castillo. (AR 364.) On the sheet, he indicated that Castillo should avoid prolonged walking, standing, and sitting, jumping, running, bouncing, climbing, crawling, turning, stooping, crouching, kneeling, and lifting ten pounds or more. (*Id.*)

Less than two weeks after seeing Dr. Vigil, Castillo returned to Dr. Torres for a follow-up regarding his hypertension. That day, Castillo reported that his pain was a five out of ten, and Dr. Torres noted that Castillo had normal balance and gait. (AR 369.) Dr. Torres also commented that Castillo had never filled his prescriptions from his last visit, and those prescriptions included pain medication for his back. (AR 354, 370.)

### HEARING TESTIMONY

The ALJ held a hearing on February 14, 2011, at which Castillo and Vocational Expert ("VE") Daniel Moriarty testified. (AR 21-49.) Castillo was represented by counsel at the hearing. (AR 21.) The ALJ admitted Dr. Baum's and Dr. Vigil's reports into the record (AR 25), and Castillo's attorney made an opening statement requesting that the ALJ give more weight to these evaluations (AR 26-29).

Castillo testified at the hearing that he quit his part-time janitorial job because of his back pain. (AR 31.) He stated that he could walk for no more than twenty minutes or sit for thirty or forty-five minutes and that his pain was getting worse over time. (AR 32-33.) He told the ALJ that he was able to drive, cook, do household chores like sweeping, vacuuming, laundry, and taking out the trash, and that he could do some yard work. (AR 34-35.) Castillo discussed his hobbies, which included working on cars once or twice a week, spending time with family and

friends, and watching sports on television. (AR 36-38.) The ALJ also asked Castillo about his mental impairments, and Castillo informed him that he had never received counseling for his depression. (AR 33.)

The VE testified at the conclusion of the hearing. The ALJ asked the VE to assume a person of the same age, education, and work history as Castillo, who is limited to light work, must alternate between sitting and standing approximately every thirty minutes, can occasionally climb, balance, and stoop, but never kneel, crouch or crawl, and can only occasionally and superficially interact with the public and coworkers. (AR 46.) The ALJ asked if the hypothetical person could perform jobs available in the regional or national economy. (*Id.*) The VE testified that the individual could perform the following jobs: small parts assembler, with 1,800 jobs in New Mexico and 175,000 in the national economy; laundry folder, with 1,700 jobs in New Mexico and 175,000 jobs in the national economy; and food assembler, with 1,500 jobs in New Mexico and 125,000 in the national economy. (AR 46-47.) The ALJ asked the VE to clarify whether all of the positions had little interaction with other people, and the VE affirmed that they did. (AR 47.)

## THE ALJ DECISION

The ALJ reviewed Castillo's application for benefits according to the sequential evaluation process. At the first step, the ALJ found that Castillo had not engaged in substantial gainful activity since his alleged onset date of January 1, 2008. (AR 11.) Then, at the second step, the ALJ concluded that he suffers from the severe impairments of depression and degenerative disc disease. (*Id.*) At step three, the ALJ found that Castillo's combination of severe impairments did not equal one of the listed impairments. (AR 11-12.)

The ALJ then reviewed the medical evidence and determined that Castillo had the capacity to perform a limited range of light work, subject to the following limitations: he must be able to alternate between sitting and standing approximately every twenty minutes; he could only occasionally balance, climb, or stoop; he could never crouch, crawl, or kneel; he could only have occasional contact with the public and co-workers. (AR 12.)

At step four, the ALJ concluded that Castillo could not perform his past relevant work. (AR 14.) She considered Castillo's age, education, work experience, and RFC for light work, and at step five she concluded that, based on the testimony of the VE, he could perform the work of small parts assembler, laundry folder, or food assembler. (AR 15.) Accordingly, the ALJ concluded that Castillo was not eligible for benefits. (AR 16.)

## DISCUSSION

Castillo challenges the ALJ's decision on four grounds: (1) improper weight given to the opinions of Drs. Baum and Vigil; (2) failure to include his moderate ability to interact with supervisors in the RFC; (3) erroneous inclusion of the job of a laundry folder; and (4) failure to clarify the VE's testimony regarding the sit and stand option. (Doc. 19 at 3-14.) I find that Castillo's first argument lacks merit, but his second warrants remand. Accordingly, I will not consider his remaining grounds for relief.

### I.   Evaluations of Drs. Baum and Vigil

Castillo first attacks the ALJ's RFC assessment by arguing that her decision to afford little weight to the assessments of Dr. Baum and Dr. Vigil is legally erroneous. (*Id*. at 3.) While Castillo discusses the medical record as a whole, the focus of his argument rests on whether it was proper to assign little weight to these two medical opinions because their evaluations were procured by his attorney, not the SSA.

Under the rules promulgated by the SSA, an ALJ is required to consider all medical evidence presented to her, including medical opinions from physicians. *See* 20 C.F.R. §§ 404.1527, 416.927. The ALJ must consider these medical opinions "together with the rest of the relevant evidence." 20 C.F.R. §§ 404.1527(a)(2)(b), 416.927(a)(2)(b). In deciding the degree of weight to afford to a medical opinion, the ALJ is instructed to consider, among other factors, whether the opinion is supported by objective medical findings and whether it is consistent with the record. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d); *see also Pisciotta v. Astrue*, 500 F.3d 1074, 1078 (10th Cir. 2007) (holding the ALJ may discount medical evidence if it is internally inconsistent or inconsistent with other evidence).

The ALJ thoroughly considered Dr. Baum's and Dr. Vigil's medical opinions and ultimately afforded them little weight for several reasons consistent with the SSA's rules. With respect to Dr. Baum's psychological evaluation, the ALJ chose to afford it little weight because it contained internal inconsistencies. Dr. Baum had assessed Castillo's GAF at forty-two, yet he found that he had only mild limitations in all functional areas except the ability to concentrate and attend. (AR 13.) A GAF of forty-two indicates serious limitations, but Dr. Baum found none. (AR 357-58.) Further, the ALJ noted that Dr. Baum's assessment explicitly stated that some of Castillo's mental restrictions were not dependent on mental factors but on his pain level, and the ALJ had previously found that Castillo's statements regarding the persistence and degree of his pain were disproportionate to the objective medical findings. (AR 13.) Also, the ALJ considered Castillo's testimony during the hearing regarding his daily activities, hobbies, and socializing, and found them inconsistent with Dr. Baum's limitations. (*Id*.) I find that these factors constitute substantial evidence.

The ALJ likewise noted a number of inconsistencies between Dr. Vigil's evaluation and the medical opinions of Drs. Burger and Torres and the radiology report. (AR 13-14.) First, the ALJ summarized the earlier medical findings. Castillo had reported to Dr. Burger that he could walk for over a mile, sit for an hour, and lift fifty to seventy-five pounds, and Dr. Burger ultimately considered Castillo able to work. (AR 13.) Castillo's 2011 spinal x-rays supported Dr. Burger's opinion since it showed some loss of disc height, but no acute abnormality. (*Id.*)

The ALJ then moved on to Dr. Vigil's findings and summarized them, concluding that they were in sharp contrast with Dr. Torres' findings from the previous month. (AR 14.) For example, Dr. Torres reported that Castillo had a normal gait, stance, and balance, and his straight leg tests were negative on the right and the left sides. (AR 353-54.) However, a month later, Dr. Vigil reports that that Castillo had an unsteady and antalgic gait with a significant limp and a positive straight leg lift on the right side. These reports are clearly inconsistent with one another, and the other available objective medical evidence on the record from Dr. Burger and the radiology report supports Dr. Torres' evaluation, not Dr. Vigil's.

It was only after discussing all of the evidence did the ALJ comment with respect to Dr. Vigil's report, "although such evidence is certainly legitimate and deserved due consideration, the context in which it was produced cannot be entirely ignored." (AR 14.) Castillo cites to *Hinton v. Massanari*, 13 F. App'x 819, 823 (10th Cir. 2001) (unpublished), to support his argument that such statements make the ALJ's finding's legally erroneous. (Doc. 19 at 7.) However, *Hinton* only stated that *"[i]n the absence of other evidence* to undermine the credibility of a medical report, the purpose for which the report was obtained does not provide a legitimate basis for rejecting it." 13 F. App'x at 823 (citations omitted) (emphasis added). Here, the ALJ considered the context of the report only after considering the validity of the opinion in

light of the other relevant medical evidence. The ALJ's decision to afford the medical opinions of Dr. Baum and Dr. Vigil little weight was properly supported by substantial evidence in the record, and her comment about the reports' origins cannot be the basis for remand.

## II. Failure to Include Castillo's Moderate Limitation in the RFC

Next, Castillo argues that the ALJ's failure to include or consider his "moderate" limitation in his ability to interact with supervisors in her RFC assessment constitutes remandable error. (Doc. 19 at 11-12.) The Commissioner argues that Castillo has confused the different steps of the sequential evaluation process and that a finding at step three is distinct from a determination of a claimant's RFC. (Doc. 21 at 12 (citing 20 C.F.R. §§ 404.1545 (a)(5), 416 945(a)(5)).) However, after carefully considering the differences between step three and the RFC assessment, I agree with Castillo.

At step three, the ALJ considers whether the claimant has any impairment or combinations of impairments that would meet or exceed one of the medically listed impairments contained in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). The purpose of the listing of impairments in Appendix 1 is to describe "for each of the major body systems impairments that [the SSA considers] to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education or work experience." 20 C.F.R. §§ 404.1525(a), 416.925(a). For affective disorders under section 12.04 of the listing of impairments, the ALJ must consider criteria under paragraphs "A," "B," and "C." *See* 20 C.F.R. pt. 404, subpt. P, app'x 1. Paragraph "B" criteria measure the severity of four broad categories of functional limitations: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. *Id.* The second category, social functioning, encompasses a number of elements, including "work situations" that "involve

interactions with the public, responding appropriately to persons in authority (e.g., supervisors), or cooperative behaviors involving coworkers." *Id.*

If the ALJ finds that the claimant is not disabled based on the listing of impairments at step three, then the ALJ proceeds to determine the claimant's RFC. *See* 20 C.F.R. §§ 404.1520(e), 416.920(e). At this phase, the ALJ is instructed to consider a claimant's mental abilities, which includes a number of factors, such as responding appropriately in a work setting. *See* 20 C.F.R. §§ 404.1545(c), 416.945(c). While both step three and the RFC determination prior to step four are separate determinations in the sequential evaluation process, one will necessarily inform the other. In fact, the listing of impairments expressly considers the relationship between the "B" and "C" criteria and the RFC. It clarifies that the

> RFC is a multidimensional description of the work-related abilities you retain in spite of your medical impairments. *An assessment of your RFC complements the functional evaluation necessary for paragraphs B and C of the listings* by requiring consideration of an expanded list of work-related capacities that may be affected by mental disorders when your impairment(s) is severe but neither meets nor is equivalent in severity to a listed mental disorder.

20 C.F.R. pt. 404, subpt. P, app'x 1 (emphasis added).

The ALJ ultimately concluded that Castillo was not disabled based on the listings alone at step three. (AR 11-12.) In evaluating Castillo's mental impairment of depression, she considered the paragraph "B" criteria and concluded that Castillo had mild limitations in activities of daily living and concentration, persistence, and pace and moderate limitations in his ability to interact with co-workers, supervisors, and the public. (AR 11.) However, in assessing Castillo's RFC, the ALJ listed "only occasional contact with the public and co-workers" as an non-exertional limitation. (AR 12.)

Castillo notes this facial inconsistency and argues that finding a moderate limitation in the ability to interact with supervisors at step three but failing to consider whether that limitation

impacts his RFC renders the ALJ's decision deficient. The Commissioner attempts to minimize this discrepancy in two ways. First, he emphasizes that step three is distinct from the RFC determination, but as previously noted, one determination informs the others, so this is an over-simplification. It is clear from the listing of impairments that findings at step three are to be contemplated at subsequent stages. Second, the Commissioner argues that the finding at step three was merely a reference to a "category of interaction," not a concrete finding regarding supervisors. (Doc. 21 at 12.) The Commissioner then points to evidence in the record that would support the conclusion that Castillo could interact with supervisors. (*Id.* at 12-13.)

      At first, the Commissioner's second argument is persuasive. The ALJ must consider broad categories of criteria when making the step-three determination. However, the flaw in this argument is that the ALJ specifically noted that Castillo had a moderate limitation in interacting with supervisors, as opposed to discussing the broader category of "social interactions," or simply interactions in the work place. The ALJ chose to highlight interactions with supervisors at step three. Since her findings at step three should inform the her ultimate RFC determination, it is inconsistent that the ALJ did not discuss interactions with supervisors in conjunction with her subsequent evaluation of Castillo's non-exertional impairments.

When the ALJ considered the impact of Castillo's social limitations on his RFC, she reviewed Dr. Fink's evaluation, which had found that Castillo's ability for social interactions would be impaired because of his depression and lack of affect. (AR 13.) She expressly revisited her previous findings regarding his "mental status . . . under 12.04 of the regulations," which appears to be a reference to the paragraph "B" criteria. (AR 13.) She then concluded that Castillo was "best suited to occupations which require no more than occasional interactions with the public and coworkers." (*Id.*) Nowhere in the analysis does she mention supervisors.

Ultimately, "the failure of the ALJ to include his own mental restriction . . . [is] fatal to the validity of the hypothetical to the VE." *Chapo v. Astrue*, 682 F.3d 1285, 1290 n. 3 (10th Cir. 2012). This is because a hypothetical to a VE must contain every limitation that the ALJ found had existed. *Barnett v. Apfel*, 231 F.3d 687, 690 (10th Cir. 2000). Thus, the ALJ's failure to include the limitation into her consideration of Castillo's RFC resulted in an incomplete RFC, which then led to an inadequate hypothetical to the VE.

The Commissioner attempts to salvage the ALJ's RFC determination by pointing to evidence from the record which supports a finding that Castillo did not have any limitations specifically with regards to supervisors. However, this is an impermissible post hoc rationalization. *Carpenter v. Astrue*, 537 F.3d 1264, 1267 (10th Cir. 2008); *Allen v. Barnhart*, 357 F.3d 1140, 1142, 1145 (10th Cir. 2004). The ALJ's opinion must speak for itself; I may not consider these additional arguments.

The ALJ expressly found a limitation with regards to supervisors at step three, and this limitation was never discussed with regard to the RFC. Since the RFC requires that the ALJ consider precisely this information, it is perplexing why the ALJ failed to consider this point at the RFC determination. Accordingly, I find that this error warrants remand.

## CONCLUSION

For the aforementioned reasons, I grant Castillo's motion and remand this case to the SSA for reconsideration consistent with this opinion.

IT IS SO ORDERED.

_____
William P. Lynch
United States Magistrate Judge

A true copy of this order was served
on the date of entry--via mail or electronic
means--to counsel of record and any pro se
party as they are shown on the Court's docket.

15